**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| San Carlos Apache Tribe of Arizona,<br><br>Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>Defendants. | No. CV-79-00186-PHX-DLR<br><br>**ORDER** |

This matter and a related case, *Payson Community of Yavapai-Apache Indians v. State of Arizona, et al.*, 2:79-cv-00187-DLR ("*Payson*"), have been on the Court's docket for over forty-three years. They have been stayed for more than thirty-eight of them, since the Ninth Circuit in 1983 remanded with instructions "to stay proceedings . . . until the state court proceedings have been concluded." *N. Cheyenne Tribe v. Adsit*, 721 F.2d 1187, 1189 (9th Cir. 1983). During this time, the Court has received periodic status reports—at times annually; more recently semi-annually—regarding the status of the various state court proceedings. The undersigned has been assigned to these cases for nearly eight years. Based on the Court's review of the status reports during this time, it does not appear that an end to the state court proceedings is imminent.

On June 29, 2007, Judge James A. Teilborg, who was then assigned to these cases, issued orders to show cause why these suits should not be dismissed without prejudice. (Doc. 104 in this case, and Doc. 99 in *Payson*.) In those orders, Judge Teilborg expressed

skepticism "that the Ninth Circuit envisioned the suit to be stayed in federal court for over twenty years." (*Id.*) Judge Teilborg proposed that the cases instead be dismissed without prejudice and with leave for the plaintiffs to reopen the cases, along with certain other safeguards to ensure that the federal forum remains readily available if warranted by a significant change of circumstances. (*Id.*) Following the show cause hearing, however, Judge Teilborg recused. (Doc. 109 in this case, and Doc. 104 in *Payson*.) No further action was taken on the orders to show cause.

Fifteen years later, the Court is even more skeptical that the Ninth Circuit intended for these cases to be stayed for decades, with the parties indefinitely expending resources preparing annual or semi-annual status reports. If a significant change of circumstances were to warrant the availability of a federal forum, one would imagine that change would have occurred at some point in the past thirty-eight years. Yet, as far as the Court can tell from its review of the docket, Plaintiff has never asked this Court to lift the stay following the Ninth Circuit's remand in 1983, save for one instance in 1999 when Plaintiff moved to lift the stay for the limited purposes of dismissing certain of its claims. (Doc. 63.)

On May 23, 2022, the Court issued an order directing the parties to show cause in writing why the Court should not now follow Judge Teilborg's proposal and dismiss this case without prejudice and with leave for Plaintiff to reopen the case without Defendants asserting a defense of untimeliness (assuming Plaintiffs have been diligently pursing the related matter in state court). Such dismissal would expressly reserve to Plaintiff the right to either re-file this action or move to re-open this case number should the need for federal court action arise. If Plaintiff decides to re-open this action, Plaintiff would not be required to re-serve any current Defendants. All parties to this action would be required to maintain on record, in this case, a current statement of each parties' counsel, counsel's contact information, and the party's contact information until such time as the related state court matter reaches a final judgment. (Doc. 164.)

On June 1, 2022, Defendants responded that they do not oppose dismissal without prejudice on the terms described in the Court's order. (Doc. 165.)

On June 6, 2022, Plaintiff responded that it opposes such dismissal. (Doc. 166.) Most of Plaintiff's response describes Plaintiff's displeasure with the pace of the state court proceedings. In the last paragraph of its filing, however, Plaintiff actually addresses the Court's proposal:

> While it might seem that there is little functional difference between maintaining the stay in this case and dismissing without prejudice under certain conditions listed by the Court, it is [Plaintiff's] position that dismissal would communicate to the adjudication parties that the pace of the proceedings is satisfactory to the Court. It would also send a signal that the federal court is giving up on the powerful federal interest in safeguarding Indian water rights, and ceding all jurisdiction and responsibility to the state courts, despite the adverse effect on [Plaintiff]. This Court has an unflagging obligation to honor the original jurisdiction of the federal court and should not dismiss this case. Rather, the Court should express its concern and dissatisfaction with the progress of the state proceeding. [Plaintiff] respectfully urges the Court to keep the current stay in place and refrain from dismissing the case.

(*Id.* at 5-6.)

This response is unpersuasive. Federal courts are in the business of resolving cases and controversies, not in sending messages of approval or disapproval. Despite its complaints about the pace of the state court proceedings, Plaintiff does not ask the Court to lift the stay—or to do anything with this case, for that matter. Rather, Plaintiff asks the Court to maintain the status quo. But Plaintiff fails to explain how a dismissal without prejudice and on the terms described in the Court's May 23, 2022 order would be inadequate to preserve federal jurisdiction if or when it is needed. For example, Plaintiff alludes to the possibility of moving to lift the stay in the future, stating: "If the pace of the adjudication and these delay tactics make [Plaintiff] unable to enforce its rights under the Globe Equity Decree, the time for lifting the stay in this case may be soon." (*Id.* at 5.) But the dismissal without prejudice contemplated by the Court would preserve Plaintiff's ability to either file a new federal action *or re-open this one* should the need for federal court action arise. Plaintiff fails to explain why a motion to re-open this action is

functionally different from a motion to lift the stay in this action, particularly when the sole function of this Court for nearly four decades has been to receive periodic status reports.[1]

**IT IS ORDERED** that this action is **DISMISSED** without prejudice and on the following terms: Plaintiff has the right to either re-file this action or move to re-open this case number should the need for federal court action arise, without Defendants asserting a defense of untimeliness (assuming Plaintiff has been diligently pursing the related matter in state court).  If Plaintiff decides to re-open this action, Plaintiff will not be required to re-serve any current Defendants.  All parties to this action are required to maintain on record, in this case, a current statement of each parties' counsel, counsel's contact information, and the party's contact information until such time as the related state court matter reaches a final judgment.

Dated this 7th day of June, 2022.

_____
Douglas L. Rayes
United States District Judge

---

[1] Plaintiff's position is even more untenable in light of footnote 1 of its response, in which Plaintiff proposes, as an alternative to preparing status reports, that the parties instead provide the Court with "the Arizona General Stream Adjudication Bulletin, which is prepared and distributed by the Special Master every four months, summarizing information about the adjudication proceedings during that time." (Doc. 166 at 5 n.1.)  The Court sees no sense in this case remaining open yet stayed solely so that the parties can provide the Court with an otherwise publicly available document every four months.